UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
COURT FILE NO.: CV – 06-1104

| | |
|---|---|
| Brennan McNally<br><br>Plaintiff,<br>v.<br><br>Client Services, Inc., Scott Bay, William Watson, Nick Moore, Dennis Fears aka Ryan Fears and Rebecca Shane<br><br>Defendants. | **Judge Terrence F. McVerry**<br>**Magistrate Judge Lisa Pupo Lenihan**<br><br>**AMENDED COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

## JURISDICTION

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d).

2. This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") in their illegal efforts to collect a consumer debt.

3. Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

## PARTIES

4. Plaintiff Brennan McNally is a natural person who resides in the County of Allegheny, Commonwealth of Pennsylvania, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

5. Defendant Client Services, Inc. (hereinafter "Defendant Client Services") is a foreign corporation and a collection agency operating from an address of 3451 Harry Truman Boulevard, St. Charles, MO 63301-4047 and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

6. Defendant Scott Bay (hereinafter "Defendant Bay") is a natural person employed by Defendant Client Services as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

7. Defendant William Watson (hereinafter "Defendant Watson") is a natural person employed by Defendant Client Services as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

8. Defendant Nick Moore (hereinafter "Defendant Moore") is a natural person employed by Defendant Client Services as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

9. Defendant Dennis Fears a/k/a Ryan Fears (hereinafter "Defendant Fears") is a natural person employed by Defendant Client Services as a collection agent and is a "debt collector" as that term is defined by15 U.S.C. § 1692a(6).

10. Defendant Rebecca Shane (hereinafter "Defendant Shane") is a natural person employed by Defendant Client Services as a collection agent and is a "debt collector" as that term is defined by 15 U.SC. § 1692a(6).

## FACTUAL ALLEGATIONS

11. Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes, that went into default for late payment, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, a Citicard Visa charge card issued by Citibank.

12. Prior to April, 2006, Plaintiff disputed with Citibank a portion of the charges.

13. Sometime in or around April 21, 2006, the Plaintiff's alleged debt was consigned, placed or otherwise transferred to Defendants for collection from Plaintiff, when thereafter

Plaintiff started receiving collection communications from Defendants in an attempt to collect this debt.

### *Call from Scott Bay*

14. On or about April 26, 2006, Plaintiff's received a call from Defendant Bay.

15. Plaintiff advised Bay that he was disputing the charges. Bay told the Plaintiff he had until April 27th to resolve the matter.

16. Later on that day, McNally called Bay advising that he believed he was only responsible for approximately $600.00. Bay responded by telling Plaintiff he didn't only charge approximately $600.00 on the account and almost guarantees that Plaintiff was responsible for more.

17. These calls to and from Defendant Bay are collection communications in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(7), 1692e(10), 1692e(11), 1692f, 1692g amongst others.

### *Call from William Watson*

17. On or about May 10, 2006, Plaintiff received a call from Defendant Watson.

18. Plaintiff advised Watson that he was disputing the debt. Watson responded by telling Plaintiff that this is more likely a valid debt and 9 out of 10 times credit card companies win. He further told Plaintiff that the longer he disputed the charges, the worse his credit would be. Watson told Plaintiff he wouldn't be able to buy a house and it might hinder Plaintiff's ability to get a job. Watson advised Plaintiff that if he didn't have the money to pay the debt, he should get an attorney. Questioning Plaintiff's veracity, Watson said it sounded like "you are throwing the dispute thing" because you don't have the money to pay the debt. He further stated "what is the point of disputing this" when you don't have any money to

pay and there is no way possible you only owe $600.00 on the bill.  Watson told Plaintiff to take $1,000 and hire an attorney and that an attorney would tell him to take advantage of the settlement offer.  Watson said "you're a college man, so if you want to hire yourself an attorney , hire an attorney but it is going to cost you a lot more than $6,000.00, I can tell you that right now."  Watson then told Plaintiff that he needed to get himself an attorney to file for bankruptcy.  He told Plaintiff that whenever he is standing there against Citibank, Citibank will win because they have a lot more money and the person with the most money generally wins.

19. This call from Defendant Watson is a collection communication in violation of numerous and multiple provisions of the FDCPA , including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(7), 1692e(10), 1692e(11), 1692(f), 1692g, 1692g(a)(3).

### *Call from Dennis Fears aka Ryan Fears*

20. On or about May 24, 2006, Plaintiff received a call from Dennis Fears a/k/a Ryan Fears.

21. Defendant Fears advised Plaintiff that this was his last opportunity to get the matter resolved.  Due to the harassment and abuse, Plaintiff, prior to this call, agreed to make monthly payments with the understanding that the interest and service charges would be frozen and he could continue to dispute a portion of the charges.  During this call, Plaintiff advised Defendant Fears that he couldn't make the monthly payments.  Fears stated that Plaintiff was either going to put a stop on the check and Citibank would then sue, or he would figure out a way to come up with the remaining balance to make good on the check.  Fears advised Plaintiff that a stop payment would cause Citibank to file suit against Plaintiff immediately.  Fears went on to say "just expect the worst if you put a stop pay on the

check." Citibank would then get a judgment against Plaintiff, which would hang over his head until it was paid. Plaintiff responded by stating he didn't understand why he couldn't dispute the debt. Fears responded by telling Plaintiff that he didn't have that opportunity because Citibank demands payment in full and it is the largest creditor in the world and will get what it wants. Fears told Plaintiff that if the account goes back to Citibank, he was looking at a judgment of $9,000.00 that would hang over his head for 10 years, his credit would be shot for 10 years and when he tried to get a job, he would have to sit down with the human resources representative and talk about how his paycheck was going to be garnished and that this was all very embarrassing. Fears said if Plaintiff didn't make good on a payment arrangement, Citibank would incur additional costs like court fees and add these costs to Plaintiff's bill. Plaintiff put a stop on the check. Citibank never sued Plaintiff.

22. This call from Defendant Fears is a collection communication in violation of numerous and multiple provisions of the FDCPA , including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(7), 1692e(10), 1692e(11), 1692(f), 1692(g), 1692g(a)(3).

### Call from Nick Moore

23. In or around May, 2006, Plaintiff received a call from Nick Moore.

24. Moore asked Plaintiff if he was "serious" when he said he owed approximately $650-700. Moore told Plaintiff that his dispute wasn't valid. Moore advised Plaintiff to borrow the money from his mother and not to open up another credit card account, because it looks like Plaintiff couldn't handle it. Moore told Plaintiff he didn't want to take responsibility for late payment and the charges and he would have to "suck it up". According to Moore, Plaintiff was going to pay one way or another. Moore told Plaintiff that the only way this was going

to get resolved was for Citibank to file a "claim". He told Plaintiff that his dispute was a stall tactic. When Plaintiff told Moore he was in college, Moore responded by saying "I forgot people who are in college don't have to pay their bills". Moore asked how Plaintiff could make payments without a source of income. Plaintiff informed Moore that he gets disability payments. Moore asked Plaintiff why he was running up a credit card if he was on disability. Moore told Plaintiff he must have lied on his application since credit card companies don't give cards to people who are disabled. Moore told Plaintiff that he committed fraud and anyone on disability has no right to have a credit card. Moore told Plaintiff that Citibank wasn't going to give a credit card to a college student who didn't have a job. Moore told Plaintiff that he wouldn't be able to get a job after graduating from college and that he would probably default on his student loans. Moore told Plaintiff to get the money from his grandmother. Plaintiff told Moore that his grandmother passed away. Moore then said get it from your grandpa or neighbor and that he didn't care where Plaintiff got the money, because he owed it. Moore told Plaintiff that he would be living with his mother until he was 34. Moore told Plaintiff that he was no longer a customer. He was a debtor and people like Plaintiff run and hide all day long and we have to search you down.

25. This call from Defendant Moore is a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(7), 1692e(10), 1692e(11), 1692f, 1692g, 1692g(a)(3).

### *Call from Rebecca Shane*

26. On or about June 23, 2006, Plaintiff received a call from Defendant Shane.
27. Plaintiff advised Shane he was disputing the debt. Shane told Plaintiff that he couldn't

dispute interest or late fees because he signed a contract. Shane told Plaintiff he would have to pay the balance in full if the account was recalled by Citibank. Shane then transferred the call to her supervisor, who advised Plaintiff that he couldn't dispute the interest, and that what he saw was Plaintiff running up the card, unable to pay and figured he would lodge a dispute.

28. This call from Defendant Shane and her supervisor is a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(7), 1692f, 1692g.

### *Failure to Provide Validation Notice*

29. Defendant never provided Plaintiff with a thirty (30) day validation notice in violation of 15 U.S.C. § 1692g.

### *Defendant's Failure to Disclose It Is a Debt Collector*

30. Within the year preceding the filing of the original complaint, Defendant left a communication in the form of a message on Plaintiff's telephone.

31. The message stated: "[T]his message is for Brennan McNally. Brennan this is Marty Carr. My number is 1-800-521-3236, ext. 4264. Please return my call as soon as you get this message. This message fails to provide the disclosure required by 15 U.S.C. § 1692e(11).

### *Summary*

32. The above-detailed conduct by Defendants, of harassing Plaintiff in an effort to collect this debt was a violation of numerous and multiple provisions of the FDCPA, including but not limited to all of the above mentioned provisions of the FDCPA.

33. Plaintiff has suffered actual damages as a result of these illegal collection communications by these Defendants in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions.

## CAUSES OF ACTION

### COUNT I.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. § 1692 et seq.

34. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

35. The foregoing intentional and negligent acts and omissions of each and every Defendant constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

36. As a result of Defendants' violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each and every Defendant herein.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against each and every Defendant:

### COUNT I.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. § 1692 et seq.

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every Defendant and for Plaintiff;

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against each and every Defendant and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each and every Defendant and for Plaintiff;

- for such other and further relief as may be just and proper.

Respectfully submitted,

Dated: April 23, 2007

**Jeffrey L. Suher, P.C.**

By:  **s/Jeffrey L. Suher**

Attorney I.D.#74924
4328 Old Wm. Penn Hwy., Ste. 2J
Monroeville, PA 15146
Telephone:  (412) 374-9005
Facsimile: (412) 374-0799
lawfirm@jeffcanhelp.com

**Attorney for Plaintiff**